# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANICE STEWART )<br>)<br>Appellant )<br>v. )<br>)<br>CAPITAL CITY MORTGAGE CORP. )<br>)<br>Appellee )<br>) | Civil Action No. 05-1586<br>(James Robertson, Jr., Judge)<br><br>Bankruptcy Case No. 00-0046<br>Adversary Proceeding No. 02-10020 |

## BRIEF OF APPELLEE

Capital City Mortgage Corporation, Appellee, by and through the undersigned counsel, hereby submits this Brief for the Court's consideration.

Respectfully submitted,

/s/ Charles H. Acker, III
Charles H. Acker, III #935460
1223 11th Street, N.W.
Washington, D.C. 20001
(202) 289-8474 ext. 105

Attorney for Appellee
Capital City Mortgage Corp.

Table of Contents

1. Issue Presented…………………………………………3

2. Facts of the Case…………………………………….3

3. Argument…………………………………………5

4. Conclusion………………………………………..8

5. Appendix……………………………………….10

<u>Issue Presented</u>

Whether a provision for attorney's fees to the prevailing party in the event of breach contained in an agreement to modify a note extends to the enforcement of the note which is the essence of the agreement and attorney's fees should be limited to those items upon which the claiming party prevailed and only upon a sufficient itemization and delineation of those fees.

<u>Facts of Case</u>

As noted by the Appellant, this matter comes before this Court upon an appeal of the decision of the Bankruptcy Court for the District of Columbia ruling upon the fee request of Appellant's counsel. That request was based upon a provision in a loan modification agreement by and between the Appellant Stewart and the Appellee Capital City Mortgage Corporation.

The relevant provision is Paragraph 3 of the "Settlement Agreement and Release" (Plaintiff's Trial Exhibit 16). That paragraph provides, *inter alia*, "any party damaged by the breach will be entitled to damages from the breaching party, including the amount of counsel fees and other litigation expenses incurred in enforcing this Agreement and Release." It is this provision upon which any and all discussion must be based.

The litigation commenced with Ms Stewart filing a petition under Chapter 13 of the Bankruptcy Code in the face of a pending foreclosure. After the filing of the proof of claim and Chapter 13 plan Ms Stewart filed the Adversary Proceeding in an

attempt to enforce the Settlement Agreement and Release of 1996 which had modified the original Note entered into in 1993. There was considerable confusion about the existence of any such Agreement as Capital City's General Counsel, who had negotiated the Agreement , left Capital City in 1999 and the principal of Capital City suffered an accident in 2000 which left him totally incapacitated and unable to communicate until his death in 2002. Upon receiving a copy of the Agreement from Ms Stewart's counsel in December 2002 Capital City acknowledged it.

The parties then went to trial on the issues of the Agreement and its enforcement, the application of the amortization table, what charges were allowable against Ms Stewart's account and her default in payment of the modified Note or more specifically, the balance owed.

The Appellant suggests that the decision of the Bankruptcy Court reduced the obligation of the Ms Stewart from $41,726.09 to $27,249.79. That is not quite correct as it is a comparison of "apples to oranges." The Figure of $41,726.09 included all charges that Capital City alleged due and owing. The $27,249.79 figure was simply the principal amount due without including all of the additional interest and charges that the Bankruptcy Court allowed. In fact the actual amount including all allowed charges as determined by the Bankruptcy Court was in excess of $34,000.00.

Argument

Firstly, the Appellant suggests that the Note, Deed of Trust and Amortization Table were all part of the "Agreement" for the purpose of allowing attorney's fees for breach.

Before dealing with that argument a review of the amortization table is in order as the Appellant seems to make much of its inclusion. An amortization table sets forth the application of each payment over the life of a loan and how it reduces the principal and interest as paid. An amortization table presumes that each and every payment is made timely and in the correct amount. If a payment is missed or is made significantly late the amortization table can no longer apply to that loan. In the instant action, the bankruptcy court found that Ms Stewart was "behind six payments after she made the $1,523.20 payment in July 1999." (Order of November 10, 2004, (D.E. #35)) As Ms Stewart was in default long before Trial or even the filing of the underlying Bankruptcy Petition, it being a 2000 case, the amortization table had long since become a nullity.

This leaves the Note, Deed of Trust and the Agreement to be enforced as an entirety under the Appellant's argument. However, if that is the case, we must look to the provision allowing attorney's fees again. That provision allows attorney's fees from the breaching party to the party damaged by the breach. A review of the Bankruptcy Court's Orders shows that the breach was not all one sided.

Appellant suggests on page 8 of its brief "Appellant prevailed at the trial." This statement was made in that portion of the Appellant's brief discussing the existence of the agreement, something which Capital City had already conceded. This context must have been intended to limit this statement to that one issue as it certainly cannot be said to be accurate as to the whole case. The Appellant prevailed on only a portion of the issues in contention.

Specifically, the Appellant sought acknowledgment of the existence of the Agreement, a position Capital City first opposed because no such Agreement was found in its files, or provided by Appellant, but had conceded by the time of trial. So it could be said that Appellant prevailed on that issue. Appellant also sought a determination of the principal balance at a specific figure, a request upon which she did not prevail. Also sought was application of payments in accordance with the original amortization schedule, relief that was not granted. Lastly, the Appellant sought cancellation of charges she maintained were inconsistent with the Note of August 1, 1996, relief that was granted in part and denied in part. Thus, there was no one "winner."

In addition to the foregoing the Bankruptcy Courts' Order of November 10, 2004 shows that the Appellant was in default under the Note as previously stated. The Court's Order of June 13, 2005 shows that Capital City was not in default under the agreement by paying the insurance bill, (Para.4(C)); Capital city was allowed to collect $1,723.81 in real estate taxes, (Para. 4(D)); Capital City was allowed to collect 10 late charges, (Para. 4(E)); that ten payments were missed in 1998 and 1999, (Para. 4(F)); Capital City was allowed various charges including cancelled foreclosure

charges, lift stay filing costs, bad check charges, inspection fees and copy charges, (Para. 4(J-O)).

If, as the Appellant suggests that attorney fees are warranted over and above the amount already granted, for what are they entitled?  The sum total of attorney's fees that the Appellant's counsel presented was obviously for the entire case, no other explanation is given.  But the entire case included defending Capital City's claim that the Appellant was in default as well as asserting that Capital City was not entitled to prevail in any way.  Capital City did show that the Appellant was in default and in spite of all the Appellant's claims was entitled to collect sums for real estate taxes, late fees and a cancelled foreclosure, among others.  It would therefore appear that the Appellant is seeking an award of attorney's fees for those items which it lost.

The Appellant suggests that the Bankruptcy Court's decision to allow 10% was arbitrary.  The Appellant states that the decision was clearly erroneous and an abuse of discretion.  However, the Court was faced with making an allocation without sufficient information as the Appellant failed to provide the Court with a rational breakdown of how the time was incurred.  So the Appellant invited the Court to be arbitrary. It cannot be an abuse of discretion when the Court has been provided insufficient information by the party seeking relief.  The Appellant had the burden of setting forth its time and costs in such a way that the Court could make a reasoned decision, but the Appellant failed to do so. Even if the Court accepted the argument of appellant that the Note, Trust and Agreement must all be combined in order to determine the amount incurred in enforcement, there is still insufficient information upon which to base a decision.  The Appellant never set forth an allocation of time

showing what was expended on those matters upon which it prevailed. The Court should not grant fees for time incurred in defending or asserting claims upon which the claimant does not prevail. There should be no reward for not prevailing even aside from the fact that the provision of the Agreement cited does not allow for such.

As a last attempt to justify the blanket claim for attorney's fees for both prevailing and not prevailing the Appellant suggests that there is an issue of bad faith. This is the first suggestion of bad faith in this action. Nowhere in any of the Orders of the Bankruptcy Court is there any finding of bad faith on the part of Capital City. While the Appellant suggests that the Bankruptcy Court "was aware of and acknowledged the Capitol City's unconscionable behavior" (sic) there is no citation or support for this statement. The Adversary Action arose in large part because Capital City, having changed its General Counsel and lost its President, could not find the Settlement Agreement and Release that evidenced the modification of the original Note. While Capital City may have been derelict in some sense in not acknowledging the agreement sooner even the Bankruptcy Court noted that the problem could have been ameliorated by the Appellant. In the Bankruptcy Court's Order of November 10, 2004 (D.E. #35) in footnote 5 on page 7, the Court noted that "debtor's counsel could and should have provided Capital City with a copy of the 1996 Agreement prior to December 2002." If there was any "bad faith" there was enough to go around.

Conclusion

The decision of the Bankruptcy Court was not "clearly erroneous," it was in fact the appropriate decision in light of the Appellant prevailing only partially and failing

to provide the Court with sufficient information to make a careful calculation of fees to be awarded.

        Respectfully submitted,

        /s/ Charles H. Acker, III
        Charles H. Acker, III #935460
        1223 11th Street, N.W.
        Washington, D.C. 20001
        (20) 289-8474 ext. 105

        Attorney for Appellee
        Capital City Mortgage Corp.

Case 1:05-cv-01586-JR    Document 5    Filed 10/05/2005    Page 9 of 11

<u>Appendix</u>

1. Transcript of hearing to address remaining issues held June 13, 2005

2. 1996 Loan Modification Agreement and exhibits (Plaintiff's Trial Exhibit 16

3. Memorandum Decision of 11/10/04 (Docket Entry 19)

4. Order pursuant to Memorandum Decision (Docket Entry 35)

5. Debtor Attorney's statement of fees and costs (Docket Entry 38)

6. Submission of Capital City pursuant to Order of November 10, 2004 (docket Entry 39)

7. Response to statement of fees and costs by Capital City (Docket Entry 40)

8. Final Judgment Order of 6/14/2005 (Docket Entry 47)

Certificate of Service

I HEREBY CERTIFY that a copy of the foregoing Brief of Appellee was mailed, postage prepaid, first class mail to Marcia K. Docter, 801 Pennsylvania Ave., N.W., #1101, Washington, D.C. 20004 and David E. Lynn, 11300 Rockville Pike, Suite 408, Rockville, MD, 20850 this 5th day of October 2005.

/s/Charles H. Acker, III
Charles H. Acker, III