## SETTLEMENT AGREEMENT AND RELEASE

THIS AGREEMENT, made this  1RST  day of  August, 1996, between, Janis Stewart hereinafter referred to as Maker and Capital City Mortgage Corporation, hereinafter referred to as Holder.

WHEREAS, Maker is indebted to Holder as evidenced by that certain Promissory Note dated July 27, 1993 (the "Note") and secured by a Deed of Trust on property known as: 3401 Brothers Place., S.E., Washington, D.C. 20032 (the "Property") dated July 27, 1993, and recorded on January 6, 1994, among the land records of the District of Columbia as Instrument Number 9400001538.

WHEREAS, the Note is presently past due, and in default and there remains a balance due hereunder, and, the Holder and Maker have agreed to a modification of the terms of the Note, as set forth in a copy of the Note attached hereto as Exhibit A, and a modification of the Deed of Trust, attached hereto as Exhibit B.

NOW, THEREFORE, IN CONSIDERATION OF THE FORBEARANCE AND THE UNDERTAKINGS CONTAINED HEREIN, IT IS MUTUALLY AGREED AS FOLLOWS:

1.    **Release.**  The parties hereto hereby mutually release, acquit and forever discharge for themselves, their assigns and all persons claiming for, through or on their behalf, each other and each other's agents, employees, and any and all other persons, firms, corporations, and entities, whether herein named or referenced, of and from any and all actions, causes of action, claims, demands, damages, costs, expenses, compensation of any sort whatsoever, accruing, arising, or coming due at any time prior to the effective date of this Agreement and Release, and arising out of the transactions, occurrences, matters of things that were or could have been alleged in connection with the instant foreclosure proceedings or in any potential civil suit arising out of the instant loan transaction. This agreement settles and operates as a full release of all matters arising between the parties, and their assigns and successors, to date, including all pending and yet to be filed lawsuits or actions.

2.    Each of the parties to this *Agreement and Release* covenants that it will never institute or prosecute any claim, demand or cause of action released pursuant to paragraph 4 against any other party to this *Agreement and Release* or in any way aid in the institution or prosecution of any such claim, demand or cause of action.

3.    In the event that any party breaches any of the covenants, undertakings or warranties of this *Agreement and Release*, any party that is damaged by the breach will be entitled to damages from the breaching party, including the amount of any counsel fees and other litigation expenses incurred in enforcing this *Agreement and Release*.

4. This *Agreement and Release*, and the Exhibits hereto, contain the entire agreement of the parties with regard to the matters set forth herein. Each of the parties to this *Agreement and Release* has participated in the drafting of this Agreement and accordingly there shall be no presumption that any claimed ambiguity will be construed against any party.

5. Maker has had access to counsel prior to executing this agreement, has read this agreement, understands and agrees to the same and have received a copy hereof and agrees to be fully bound thereby. This agreement represents the entire agreement between the parties and no other agreement except as set out herein exists. This agreement may not be varied or modified except in writing.

6. This modification supercedes all prior agreements. Upon execution of this Agreement, Holder will return to Maker the prior deed in lieu of foreclosure. Title remains vested in Maker.

7. The amortization schedule for the 180 payments of $380.72 each is attached hereto as Exhibit C.

8. Maker agrees to pay for her own taxes and insurance (with a mortgagee's clause in favor of Holder) and to provide proof of payment to Holder within fifteen (15) days of payment. Maker has thirty (30) days from execution of this Agreement to provide proof of insurance. Failure to comply with this paragraph constitutes a default under the Note and Deed of Trust. In the event Maker does not cure such a default, within fifteen (15) days written notice thereof, to Maker and her attorney, Marcia Docter, Holder reserves all rights to pay any outstanding taxes and fines or to obtain insurance for the property, said advances to bear interest at the note rate until repaid, all at Holder's option.

CAPITAL CITY MORTGAGE CORPORATION
by:

_____
Thomas K. Nash, President

_____
Janice Stewart

_____
Marcie Docter, Esquire
666 11th Street, N.W., Suite 1010
Washington, D.C. 20001

**Exhibit A**

# NOTE

August 1, 1996    Washington, DC
                  [City]    [State]

2589 Naylor Road, S.E., Apt. 204, Washington, DC 20020
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $37,500.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Capital City Mortgage Corporation. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 9 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 5th day of each month beginning on September 5, 1996. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on August 5, 2011, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 1223 11th Street, N.W., Washington, DC or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $380.72

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. Copies of all notices will also be sent to Marcia K. Docter, 666 11th Street, N.W., Suite 1010, Washington, DC 20001

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE FIXED RATE NOTE—Single Family FNMA/FHLMC UNIFORM INSTRUMENT    Form 3200 12/83

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

........................................................Janis Stewart........................................(Seal)
                                                                                                   -Borrower

................................................................................................................(Seal)
                                                                                                   -Borrower

................................................................................................................(Seal)
                                                                                                   -Borrower

[Sign Original Only]

**Exhibit B**

MODIFICATION OF DEED OF TRUST RECORDED JANUARY 6, 1994
AS INSTRUMENT NO. 9400001538 ON SQUARE 6006, LOT 803

**DISTRICT OF COLUMBIA DEED OF TRUST**
(All Rights Reserved)

Washington Law Reporter Form 502
1625 Eye St., N.W., Washington, D.C. 20006

as of

**This Deed of Trust,** made this 1st day of August, 1996, by and between

JANIS STEWART          hereinafter referred to as "Grantor," and

                       , hereinafter referred to as "Trustees";

**Whereas,** Grantor is justly indebted unto CAPITAL CITY MORTGAGE CORPORATION

in the principal sum of Thirty Seven Thousand and Five Hundred Dollars

Dollars ($ 37,500.00 ),

(Insert Type Of Transaction)

for which amount the Grantor has signed and delivered his promissory note of even date herewith

payable to the order of CAPITAL CITY MORTGAGE CORPORATION

in the principal amount of Thirty Seven Thousand and Five Hundred

Dollars ($ 37,500.00 ) bearing interest at the rate of nine percent ( 9%) per annum until paid, on the following terms and obligations:

**Now, Therefore, This Deed of Trust Witnesseth:** That to secure the prompt payment of said indebtedness and all charges and advances as in said promissory note and as herein provided, the Grantor, in consideration of the sum of One Dollar in hand paid by said Trustees at and before the sealing and delivering of these presents, the receipt of which is hereby acknowledged, does hereby grant and convey in fee simple unto the Trustees the land and premises lying and being in the District of Columbia, and described as follows: This deed of trust modifies earlier deed of trust between the parties recorded January 6, 1994, as Instrument No. 9400001538 on the property at 3401 Brothers Place, S.E., Square 6006, Lot 803. The modified obligation is $37,500.00, payable over a term of 15 years, bearing interest at 9%, monthly payment of $380.72.

together with all the improvements in anywise appertaining, and all the estate, right, title, interest, and claim, either at law or in equity or otherwise however, of the Grantor, of, in, to, or out of the said land and premises;

**In Trust** to permit said Grantor to use and occupy the said described land and premises and to receive the rents, issues, and profits thereof, until default be made in the payment of any indebtedness hereby secured and in the performance of the conditions and obligations made and stipulated in the said promissory note or in the performance of any covenant or agreement contained in this trust; and upon the full payment of all of said note and any extensions or renewals thereof, and interest thereon, and all moneys advanced or expended as provided for in said promissory note or as herein provided, and all other costs, attorney's fees, charges, commissions, and expenses, at any time before the sale herein provided for to release and re-convey the said land and premises unto and at the cost of the Grantor or the party or parties then claiming under said Grantor.

The Grantor, for himself and his successors and assigns, covenants and agrees as a part of this trust, as follows:

1. That he will pay the indebtedness evidenced by the note secured hereby, all taxes and assessments relating to the land and premises herein described, ground rents, all charges against the property, and all other sums which are required to be paid by him under the terms of said promissory note or this Deed of Trust, including costs, expenses and attorney's fees incurred by the Trustees or the holder of said note with respect to this trust, the said note or the land and premises herein described, and in default of any such payment the holder of said note may pay the same, and any sum or sums so paid shall be added to the debt hereby secured, shall be payable on demand, shall bear full legal interest, and shall be secured by this Deed of Trust.

2. That he will keep the said premises in as good order and condition as they are now and will not commit or permit any waste thereof, reasonable wear and tear accepted; and that he will not act or fail to act in any manner which will jeopardize the lien of this Deed of Trust.

3. That he will keep the improvements now existing, or hereafter erected on said land, insured against loss by fire and other hazards, casualties and contingencies in such amounts and for such periods as may be required by the holder of said note, and will pay promptly, when due, any premiums on such insurance. All insurance shall be carried in companies approved by the holder of said note and the policies and renewals thereof shall be held by said holder and have attached thereto loss payable clauses in favor of and in form acceptable to the holder of said note. In event of loss he will give immediate notice by mail to the holder of said note, who may make proof of loss if not made promptly by the Grantor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to and to the order of the holder of said note, and the insurance proceeds or any part thereof may be applied by such holder at his option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the security property. In the event of sale under the terms of this Deed of Trust or other transfer of title to said security property in extinguishment of the indebtedness secured hereby, all right, title and interest of the Grantor in and to any insurance policies then in force shall pass to the purchaser or grantee.

4. That in the event the ownership of the security property becomes vested in a person other than Grantor, the holder of said note may, without notice to the Grantor, deal with such successor or successors in interest with reference to this instrument and the indebtedness secured hereby in the same manner as with Grantor, and any extension of the time of the payment of the indebtedness or any other modification of the terms of the indebtedness at the instance of the then owner shall not relieve the Grantor of his liability on the note hereby secured or from the performance of any of the covenants and agreements contained herein whether said extension or modification be made with or without the consent of the Grantor.

5. That the irrevocable power to substitute one or more of the trustees named herein or substituted therefor is expressly reserved to the holder of the note secured by this Deed of Trust to be

exercised any time hereafter no matter how often without notice and without specifying any reason therefor by filing for record among the land records where this instrument is recorded a Deed of Appointment, and thereupon all of the title and estate, powers, rights and duties of the trustee thus superceded shall terminate and shall be vested in the successor trustee or trustees. The Grantor and the Trustees herein named or that hereafter may be substituted hereunder expressly waive notice of the exercise of this power, the giving of bond by any trustee, and any requirement for application to any Court for the removal, substitution or appointment of a trustee hereunder.

6. That each Trustee acting hereunder shall be paid a fee of ten Dollars ($10.00) for each document which he is required to execute under the terms of this Deed of Trust.

7. That his failure to perform any of his obligations under this Deed of Trust or under said note shall constitute a default and all indebtedness secured hereby shall immediately become due and payable at the option of the holder of said note. Any time thereafter, at the request of the holder of said note, the Trustees shall have the power and it shall be their duty to sell said land and premises or any part thereof at public auction, in such manner, at such time and place, upon such terms and conditions, and upon such public notice as the Trustees may deem best for the interest of all concerned, consisting of advertisement in a newspaper of general circulation in the county or city in which the security property is located for at least once a week for two successive weeks or for such period as applicable law may require and, in case of default of any purchaser, to re-sell with such postponement of sale or re-sale and upon such public notice thereof as the Trustees may determine, and upon compliance by the purchaser with the terms of sale, and upon judicial approval as may be required by law, convey said land and premises in fee simple to and at the cost of the purchaser, who shall not be liable to see to the application of the purchase money; and from the proceeds of sale: FIRST, to pay all proper costs and charges, including but not limited to court costs, advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustees' bond, auditor's fee, attorney's fee, and all other expenses of sale incurred in and about the protection and execution of this trust, and all moneys advanced for taxes, assessments, insurance, and with interest thereon as provided herein, and all taxes due upon said land and premises at time of sale, and to retain as compensation a commission of five percent (5%) on the amount of said sale or sales; SECOND, to pay the whole amount then remaining unpaid of the principal of said note, and interest thereon to date of payment, whether the same shall be due or not, it being understood and agreed that upon such sale before maturity of the note the balance thereof shall be immediately due and payable; THIRD, to pay liens of record against the security property according to their priority of lien and to the extent that funds remaining in the hands of the Trustees are available; and LAST, to pay the remainder of said proceeds, if any, to the Grantor, his heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of the said land and premises, less costs and expenses of obtaining possession.

8. That if the security property shall be advertised for sale, as hereinabove provided, and not sold, he will pay all costs in connection therewith including, but not limited to advertising, attorney's fees and a Trustees' commission of 2½% of the then unpaid principal balance of the indebtedness, and the same shall be secured in like manner as other charges and expenses relating to the execution of this trust and bear interest at the rate stated in said note.

9. That he warrants specially the property herein conveyed and that he will execute such further assurances thereof as may be requisite.

The provisions of this Deed of Trust shall be binding upon and inure to the benefit of Grantor, his heirs, personal representatives, successors and assigns, the Trustees and any successor, or substitute trustee or trustees, and the holder of the note hereby secured. Whenever used herein, the singular shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

𝔚𝔦𝔱𝔫𝔢𝔰𝔰 the following signatures and seals.

_____[SEAL]

_____[SEAL]

_____[SEAL]

_____[SEAL]

**Exhibit C**

Page: 1

Principal : $37,500.00 amortized over 15 Years at 9% (Ordinary Interest)
Issued    : 8-01-1996 with first payment on 9-05-1996
Payment   : $380.72 Monthly (Principal + Interest)

| APR %   | FINANCE CHARGE    | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---------|-------------------|-----------------|-------------------|
| 9.9995% | $31,028.56        | $37,500.00      | $68,528.56        |

| # OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS DUE              |
|---------------|--------------------|---------------------------|
| 179           | $380.72            | Monthly Starting 9-05-1996 |
| 1             | $379.68            | 8-05-2011                 |

| PMT # | Date       | Principal Payment | Interest Payment | Principal Balance |
|-------|------------|-------------------|------------------|-------------------|
|       | 8-01-1996  |                   |                  | $37,500.00        |
|       | 9-05-1996  | $62.49            | $318.23          | $37,437.51        |
|       | 10-05-1996 | $99.94            | $280.78          | $37,337.57        |
|       | 11-05-1996 | $100.69           | $280.03          | $37,236.88        |
|       | 12-05-1996 | $101.45           | $279.27          | $37,135.43        |
|       |            | ----------        | ----------       |                   |
|       | 1996 Totals | $364.57          | $1,158.31        |                   |
|       | Paid To Date | $364.57         | $1,158.31        |                   |
|       | 1-05-1997  | $102.21           | $278.51          | $37,033.22        |
|       | 2-05-1997  | $102.98           | $277.74          | $36,930.24        |
|       | 3-05-1997  | $103.75           | $276.97          | $36,826.49        |
|       | 4-05-1997  | $104.53           | $276.19          | $36,721.96        |
|       | 5-05-1997  | $105.31           | $275.41          | $36,616.65        |
| .0    | 6-05-1997  | $106.10           | $274.62          | $36,510.55        |
| .1    | 7-05-1997  | $106.90           | $273.82          | $36,403.65        |
| .2    | 8-05-1997  | $107.70           | $273.02          | $36,295.95        |
| .3    | 9-05-1997  | $108.51           | $272.21          | $36,187.44        |
| .4    | 10-05-1997 | $109.32           | $271.40          | $36,078.12        |
| .5    | 11-05-1997 | $110.14           | $270.58          | $35,967.98        |
| .6    | 12-05-1997 | $110.97           | $269.75          | $35,857.01        |
|       |            | ----------        | ----------       |                   |
|       | 1997 Totals | $1,278.42        | $3,290.22        |                   |
|       | Paid To Date | $1,642.99       | $4,448.53        |                   |
| .7    | 1-05-1998  | $111.80           | $268.92          | $35,745.21        |
| .8    | 2-05-1998  | $112.64           | $268.08          | $35,632.57        |
| .9    | 3-05-1998  | $113.48           | $267.24          | $35,519.09        |
| !0    | 4-05-1998  | $114.33           | $266.39          | $35,404.76        |
| !1    | 5-05-1998  | $115.19           | $265.53          | $35,289.57        |
| !2    | 6-05-1998  | $116.05           | $264.67          | $35,173.52        |
| !3    | 7-05-1998  | $116.92           | $263.80          | $35,056.60        |
| !4    | 8-05-1998  | $117.80           | $262.92          | $34,938.80        |
| !5    | 9-05-1998  | $118.68           | $262.04          | $34,820.12        |
| !6    | 10-05-1998 | $119.57           | $261.15          | $34,700.55        |
| !7    | 11-05-1998 | $120.47           | $260.25          | $34,580.08        |
| !8    | 12-05-1998 | $121.37           | $259.35          | $34,458.71        |
|       |            | ----------        | ----------       |                   |
|       | 1998 Totals | $1,398.30        | $3,170.34        |                   |
|       | Paid To Date | $3,041.29       | $7,618.87        |                   |

| PMT # | Date | Principal Payment | Interest Payment | Principal Balance |
|---|---|---|---|---|
| 29 | 1-05-1999 | $122.28 | $258.44 | $34,336.43 |
| 30 | 2-05-1999 | $123.20 | $257.52 | $34,213.23 |
| 31 | 3-05-1999 | $124.13 | $256.59 | $34,089.10 |
| 32 | 4-05-1999 | $125.06 | $255.66 | $33,964.04 |
| 33 | 5-05-1999 | $125.99 | $254.73 | $33,838.05 |
| 34 | 6-05-1999 | $126.94 | $253.78 | $33,711.11 |
| 35 | 7-05-1999 | $127.89 | $252.83 | $33,583.22 |
| 36 | 8-05-1999 | $128.85 | $251.87 | $33,454.37 |
| 37 | 9-05-1999 | $129.82 | $250.90 | $33,324.55 |
| 38 | 10-05-1999 | $130.79 | $249.93 | $33,193.76 |
| 39 | 11-05-1999 | $131.77 | $248.95 | $33,061.99 |
| 40 | 12-05-1999 | $132.76 | $247.96 | $32,929.23 |
| | 1999 Totals | $1,529.48 | $3,039.16 | |
| | Paid To Date | $4,570.77 | $10,658.03 | |
| 41 | 1-05-2000 | $133.76 | $246.96 | $32,795.47 |
| 42 | 2-05-2000 | $134.76 | $245.96 | $32,660.71 |
| 43 | 3-05-2000 | $135.77 | $244.95 | $32,524.94 |
| 44 | 4-05-2000 | $136.79 | $243.93 | $32,388.15 |
| 45 | 5-05-2000 | $137.81 | $242.91 | $32,250.34 |
| 46 | 6-05-2000 | $138.85 | $241.87 | $32,111.49 |
| 47 | 7-05-2000 | $139.89 | $240.83 | $31,971.60 |
| 48 | 8-05-2000 | $140.94 | $239.78 | $31,830.66 |
| 49 | 9-05-2000 | $142.00 | $238.72 | $31,688.66 |
| 50 | 10-05-2000 | $143.06 | $237.66 | $31,545.60 |
| 51 | 11-05-2000 | $144.13 | $236.59 | $31,401.47 |
| 52 | 12-05-2000 | $145.21 | $235.51 | $31,256.26 |
| | 2000 Totals | $1,672.97 | $2,895.67 | |
| | Paid To Date | $6,243.74 | $13,553.70 | |
| 53 | 1-05-2001 | $146.30 | $234.42 | $31,109.96 |
| 54 | 2-05-2001 | $147.40 | $233.32 | $30,962.56 |
| 55 | 3-05-2001 | $148.51 | $232.21 | $30,814.05 |
| 56 | 4-05-2001 | $149.62 | $231.10 | $30,664.43 |
| 57 | 5-05-2001 | $150.74 | $229.98 | $30,513.69 |
| 58 | 6-05-2001 | $151.87 | $228.85 | $30,361.82 |
| 59 | 7-05-2001 | $153.01 | $227.71 | $30,208.81 |
| 60 | 8-05-2001 | $154.16 | $226.56 | $30,054.65 |
| 61 | 9-05-2001 | $155.32 | $225.40 | $29,899.33 |
| 62 | 10-05-2001 | $156.48 | $224.24 | $29,742.85 |
| 63 | 11-05-2001 | $157.65 | $223.07 | $29,585.20 |
| 64 | 12-05-2001 | $158.84 | $221.88 | $29,426.36 |
| | 2001 Totals | $1,829.90 | $2,738.74 | |
| | Paid To Date | $8,073.64 | $16,292.44 | |
| 65 | 1-05-2002 | $160.03 | $220.69 | $29,266.33 |
| 66 | 2-05-2002 | $161.23 | $219.49 | $29,105.10 |
| 67 | 3-05-2002 | $162.44 | $218.28 | $28,942.66 |
| 68 | 4-05-2002 | $163.66 | $217.06 | $28,779.00 |
| 69 | 5-05-2002 | $164.88 | $215.84 | $28,614.12 |
| 70 | 6-05-2002 | $166.12 | $214.60 | $28,448.00 |

| PMT # | Date | Principal Payment | Interest Payment | Principal Balance |
|---|---|---|---|---|
| 71 | 7-05-2002 | $167.36 | $213.36 | $28,280.64 |
| 72 | 8-05-2002 | $168.62 | $212.10 | $28,112.02 |
| 73 | 9-05-2002 | $169.88 | $210.84 | $27,942.14 |
| 74 | 10-05-2002 | $171.16 | $209.56 | $27,770.98 |
| 75 | 11-05-2002 | $172.44 | $208.28 | $27,598.54 |
| 76 | 12-05-2002 | $173.74 | $206.98 | $27,424.80 |
| | 2002 Totals | $2,001.56 | $2,567.08 | |
| | Paid To Date | $10,075.20 | $18,859.52 | |
| 77 | 1-05-2003 | $175.04 | $205.68 | $27,249.76 |
| 78 | 2-05-2003 | $176.35 | $204.37 | $27,073.41 |
| 79 | 3-05-2003 | $177.67 | $203.05 | $26,895.74 |
| 80 | 4-05-2003 | $179.01 | $201.71 | $26,716.73 |
| 81 | 5-05-2003 | $180.35 | $200.37 | $26,536.38 |
| 82 | 6-05-2003 | $181.70 | $199.02 | $26,354.68 |
| 83 | 7-05-2003 | $183.06 | $197.66 | $26,171.62 |
| 84 | 8-05-2003 | $184.44 | $196.28 | $25,987.18 |
| 85 | 9-05-2003 | $185.82 | $194.90 | $25,801.36 |
| 86 | 10-05-2003 | $187.21 | $193.51 | $25,614.15 |
| 87 | 11-05-2003 | $188.62 | $192.10 | $25,425.53 |
| 88 | 12-05-2003 | $190.03 | $190.69 | $25,235.50 |
| | 2003 Totals | $2,189.30 | $2,379.34 | |
| | Paid To Date | $12,264.50 | $21,238.86 | |
| 89 | 1-05-2004 | $191.46 | $189.26 | $25,044.04 |
| 90 | 2-05-2004 | $192.89 | $187.83 | $24,851.15 |
| 91 | 3-05-2004 | $194.34 | $186.38 | $24,656.81 |
| 92 | 4-05-2004 | $195.80 | $184.92 | $24,461.01 |
| 93 | 5-05-2004 | $197.27 | $183.45 | $24,263.74 |
| 94 | 6-05-2004 | $198.75 | $181.97 | $24,064.99 |
| 95 | 7-05-2004 | $200.24 | $180.48 | $23,864.75 |
| 96 | 8-05-2004 | $201.74 | $178.98 | $23,663.01 |
| 97 | 9-05-2004 | $203.25 | $177.47 | $23,459.76 |
| 98 | 10-05-2004 | $204.78 | $175.94 | $23,254.98 |
| 99 | 11-05-2004 | $206.31 | $174.41 | $23,048.67 |
| 100 | 12-05-2004 | $207.86 | $172.86 | $22,840.81 |
| | 2004 Totals | $2,394.69 | $2,173.95 | |
| | Paid To Date | $14,659.19 | $23,412.81 | |
| 101 | 1-05-2005 | $209.42 | $171.30 | $22,631.39 |
| 102 | 2-05-2005 | $210.99 | $169.73 | $22,420.40 |
| 103 | 3-05-2005 | $212.57 | $168.15 | $22,207.83 |
| 104 | 4-05-2005 | $214.17 | $166.55 | $21,993.66 |
| 105 | 5-05-2005 | $215.77 | $164.95 | $21,777.89 |
| 106 | 6-05-2005 | $217.39 | $163.33 | $21,560.50 |
| 107 | 7-05-2005 | $219.02 | $161.70 | $21,341.48 |
| 108 | 8-05-2005 | $220.66 | $160.06 | $21,120.82 |
| 109 | 9-05-2005 | $222.32 | $158.40 | $20,898.50 |
| 110 | 10-05-2005 | $223.99 | $156.73 | $20,674.51 |
| 111 | 11-05-2005 | $225.67 | $155.05 | $20,448.84 |
| 112 | 12-05-2005 | $227.36 | $153.36 | $20,221.48 |

Page: 4

| PMT # | Date | Principal Payment | Interest Payment | Principal Balance |
|---|---|---|---|---|
| | 2005 Totals | $2,619.33 | $1,949.31 | |
| | Paid To Date | $17,778.52 | $25,362.12 | |
| 113 | 1-05-2006 | $229.06 | $151.66 | $19,992.42 |
| 114 | 2-05-2006 | $230.78 | $149.94 | $19,761.64 |
| 115 | 3-05-2006 | $232.51 | $148.21 | $19,529.13 |
| 116 | 4-05-2006 | $234.26 | $146.46 | $19,294.87 |
| 117 | 5-05-2006 | $236.01 | $144.71 | $19,058.86 |
| 118 | 6-05-2006 | $237.78 | $142.94 | $18,821.08 |
| 119 | 7-05-2006 | $239.57 | $141.15 | $18,581.51 |
| 120 | 8-05-2006 | $241.36 | $139.36 | $18,340.15 |
| 121 | 9-05-2006 | $243.17 | $137.55 | $18,096.98 |
| 122 | 10-05-2006 | $245.00 | $135.72 | $17,851.98 |
| 123 | 11-05-2006 | $246.84 | $133.88 | $17,605.14 |
| 124 | 12-05-2006 | $248.69 | $132.03 | $17,356.45 |
| | 2006 Totals | $2,865.03 | $1,703.61 | |
| | Paid To Date | $20,143.55 | $27,065.73 | |
| 125 | 1-05-2007 | $250.55 | $130.17 | $17,105.90 |
| 126 | 2-05-2007 | $252.43 | $128.29 | $16,853.47 |
| 127 | 3-05-2007 | $254.32 | $126.40 | $16,599.15 |
| 128 | 4-05-2007 | $256.23 | $124.49 | $16,342.92 |
| 129 | 5-05-2007 | $258.15 | $122.57 | $16,084.77 |
| 130 | 6-05-2007 | $260.09 | $120.63 | $15,824.68 |
| 131 | 7-05-2007 | $262.04 | $118.68 | $15,562.64 |
| 132 | 8-05-2007 | $264.01 | $116.71 | $15,298.63 |
| 133 | 9-05-2007 | $265.99 | $114.73 | $15,032.64 |
| 134 | 10-05-2007 | $267.98 | $112.74 | $14,764.66 |
| 135 | 11-05-2007 | $269.99 | $110.73 | $14,494.67 |
| 136 | 12-05-2007 | $272.01 | $108.71 | $14,222.66 |
| | 2007 Totals | $3,133.79 | $1,434.85 | |
| | Paid To Date | $23,277.34 | $28,500.58 | |
| 137 | 1-05-2008 | $274.06 | $106.66 | $13,948.60 |
| 138 | 2-05-2008 | $276.11 | $104.61 | $13,672.49 |
| 139 | 3-05-2008 | $278.18 | $102.54 | $13,394.31 |
| 140 | 4-05-2008 | $280.27 | $100.45 | $13,114.04 |
| 141 | 5-05-2008 | $282.37 | $98.35 | $12,831.67 |
| 142 | 6-05-2008 | $284.49 | $96.23 | $12,547.18 |
| 143 | 7-05-2008 | $286.62 | $94.10 | $12,260.56 |
| 144 | 8-05-2008 | $288.77 | $91.95 | $11,971.79 |
| 145 | 9-05-2008 | $290.94 | $89.78 | $11,680.85 |
| 146 | 10-05-2008 | $293.12 | $87.60 | $11,387.73 |
| 147 | 11-05-2008 | $295.32 | $85.40 | $11,092.41 |
| 148 | 12-05-2008 | $297.53 | $83.19 | $10,794.88 |
| | 2008 Totals | $3,427.78 | $1,140.86 | |
| | Paid To Date | $26,705.12 | $29,641.44 | |
| 149 | 1-05-2009 | $299.76 | $80.96 | $10,495.12 |
| 150 | 2-05-2009 | $302.01 | $78.71 | $10,193.11 |

Page: 5

| PMT # | Date | Principal Payment | Interest Payment | Principal Balance |
|---|---|---|---|---|
| 151 | 3-05-2009 | $304.28 | $76.44 | $9,888.83 |
| 152 | 4-05-2009 | $306.56 | $74.16 | $9,582.27 |
| 153 | 5-05-2009 | $308.86 | $71.86 | $9,273.41 |
| 154 | 6-05-2009 | $311.17 | $69.55 | $8,962.24 |
| 155 | 7-05-2009 | $313.51 | $67.21 | $8,648.73 |
| 156 | 8-05-2009 | $315.86 | $64.86 | $8,332.87 |
| 157 | 9-05-2009 | $318.23 | $62.49 | $8,014.64 |
| 158 | 10-05-2009 | $320.62 | $60.10 | $7,694.02 |
| 159 | 11-05-2009 | $323.02 | $57.70 | $7,371.00 |
| 160 | 12-05-2009 | $325.44 | $55.28 | $7,045.56 |
| | 2009 Totals | $3,749.32 | $819.32 | |
| | Paid To Date | $30,454.44 | $30,460.76 | |
| 161 | 1-05-2010 | $327.88 | $52.84 | $6,717.68 |
| 162 | 2-05-2010 | $330.34 | $50.38 | $6,387.34 |
| 163 | 3-05-2010 | $332.82 | $47.90 | $6,054.52 |
| 164 | 4-05-2010 | $335.32 | $45.40 | $5,719.20 |
| 165 | 5-05-2010 | $337.83 | $42.89 | $5,381.37 |
| 166 | 6-05-2010 | $340.36 | $40.36 | $5,041.01 |
| 167 | 7-05-2010 | $342.92 | $37.80 | $4,698.09 |
| 168 | 8-05-2010 | $345.49 | $35.23 | $4,352.60 |
| 169 | 9-05-2010 | $348.08 | $32.64 | $4,004.52 |
| 170 | 10-05-2010 | $350.69 | $30.03 | $3,653.83 |
| 171 | 11-05-2010 | $353.32 | $27.40 | $3,300.51 |
| 172 | 12-05-2010 | $355.97 | $24.75 | $2,944.54 |
| | 2010 Totals | $4,101.02 | $467.62 | |
| | Paid To Date | $34,555.46 | $30,928.38 | |
| 173 | 1-05-2011 | $358.64 | $22.08 | $2,585.90 |
| 174 | 2-05-2011 | $361.33 | $19.39 | $2,224.57 |
| 175 | 3-05-2011 | $364.04 | $16.68 | $1,860.53 |
| 176 | 4-05-2011 | $366.77 | $13.95 | $1,493.76 |
| 177 | 5-05-2011 | $369.52 | $11.20 | $1,124.24 |
| 178 | 6-05-2011 | $372.29 | $8.43 | $751.95 |
| 179 | 7-05-2011 | $375.09 | $5.63 | $376.86 |
| 180 | 8-05-2011 | $376.86 | $2.82 | $0.00 |
| | 2011 Totals | $2,944.54 | $100.18 | |
| | Paid To Date | $37,500.00 | $31,028.56 | |

Last payment was $379.68

Total payments made: 180

Total interest: $31,028.56